UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FERNANDO MARRERO,

                      Petitioner,              **Case Number: 06-13953**

v.                                         **HONORABLE DENISE PAGE HOOD**

JEFF WHITE,

                      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS

Petitioner Fernando Marrero, presently confined at the Ojibway Correctional Facility in Marenisco, Michigan, has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. Petitioner was convicted after pleading guilty in Saginaw County Circuit Court to being a felon in possession of a firearm ("felon in possession"), MICH. COMP. LAWS § 750.224F, possession of firearm at time of commission of felony ("felony firearm"), MICH. COMP. LAWS § 750.227b, and being a habitual offender, fourth offense. Petitioner filed the pending habeas petition in September 2006. For the reasons that follow, this Court DENIES the petition.

## I. BACKGROUND

This case arose from a domestic disturbance involving Petitioner, his common law wife Gloria Sanchez and Gloria's brother, Rudolfo Sanchez. In case no. 02-012721-FH, the Saginaw County Prosecutor charged Petitioner with felon in possession of a firearm, felony firearm, habitual offender, fourth offense, felonious assault, MICH. COMP. LAWS § 750.82, and domestic violence, MICH. COMP. LAWS § 750.81(2). In a separate case, no. 01-020793-FH, Petitioner was also charged with failure to register as a sex offender, MICH. COMP. LAWS § 28.729. On October 9, 2002,

Petitioner pled guilty to felon in possession, felony firearm, and as a fourth-time habitual offender. In accordance with the plea agreement, the prosecutor dismissed the felonious assault and domestic violence charges in case no. 02-012721-FH as well as the charge in case no. 01-020793-FH.

Prior to sentencing, Petitioner indicated his desire to withdraw his plea because he "didn't do it." Sent. Tr., p. 4 (12/14/2002). The state trial court held a hearing on Petitioner's motion to withdraw his guilty plea on December 16, 2002 after which the court denied the motion. On December 18, 2002, the court sentenced Petitioner within the sentencing guidelines range to seventy months to forty years imprisonment for the felon in possession of a firearm conviction, and to a consecutive two-year term for the felony firearm conviction.

Beginning on January 15, 2003, Petitioner filed requests for the appointment of appellate counsel. The state trial court denied such requests but then reconsidered the denials and appointed appellate counsel on November 13, 2003. Appellate counsel filed a Motion to Withdraw Plea and for a *Ginther* Hearing with the state trial court on or around January 15, 2004. On January 13, 2004, counsel also filed an application for leave to appeal with the Michigan Court of Appeals. The Michigan Court of Appeals dismissed the application as untimely under M.C.R. 7.205(F).[1] Petitioner did not appeal this decision to the Michigan Supreme Court.

The state trial court scheduled the Plea Withdrawal and *Ginther* Hearing for March 15, 2004. Due to appellate counsel's misunderstanding that led to the tardy filing of the application for leave

---

[1]Unbeknownst to appellate counsel, trial transcripts had been sent to Petitioner in April 2003. Pursuant to M.C.R. 7.205(F)(4)(c), counsel had forty-two days from November 13, 2003, the date he was appointed, to file a timely application for leave to appeal and not forty-two days from December 2, 2003, the date counsel received a copy of the trial transcripts, as he had assumed. Counsel filed the application for leave to appeal more than 42 days after November 13, 2003.

2

to appeal, the trial court allowed appellate counsel to file the claims he raised on direct appeal in a post-conviction motion for relief from judgment, on which he allowed argument on March 15, 2004. Mot. Tr., p. 3 (3/15/2004). Petitioner's Motion to Withdraw his plea and for a *Ginther* hearing, the brief in support of the application for leave to appeal, and the post-conviction Motion for Relief from Judgment raised the same issues:

    I.     Petitioner should be allowed to withdraw his guilty plea because it was not voluntary or knowing.

    II.    Petitioner should be allowed to withdraw his guilty plea because his trial counsel was constitutionally ineffective.

    III.   Petitioner's convictions for felon in possession of a firearm and felony firearm should be vacated because they violate double jeopardy protection against multiple punishments for the same offense.

On March 24, 2004, the trial court issued an order denying Petitioner's Motion to Withdraw His Plea and Motion for Relief from Judgment "for the reasons stated on the record." *People v. Marrero*, No. 02-021721-FH4 (Saginaw Cty. Cir. Ct. Mar. 24, 2004) (unpublished).  The trial court addressed Petitioner's allegations of ineffectiveness of counsel but did not discuss whether Petitioner made a voluntary and knowing plea.  The trial court did not hear argument on or address the double jeopardy issue.

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals raising the same claims. The court denied leave to appeal for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Marrero*, No. 260448 (Mich. Ct. App. July 22, 2005) (unpublished).  Petitioner filed an application for leave to appeal with the Michigan Supreme Court along with a motion to add a claim for ineffective assistance of appellate counsel for counsel's failure to file a timely application for leave to appeal and a motion to remand

the case so the trial court could adjudicate his "*Halbert*" claim. *See Halbert v. Michigan*, 545 U.S. 605 (2005). The Michigan Supreme Court granted the motion to add a claim, denied the motion to remand and otherwise denied the application for "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Marrero*, 474 Mich. 976 (2005).

Petitioner filed an amended petition for a writ of habeas corpus on October 12, 2006. Respondent filed a response to the amended petition on July 16, 2007 and, after receipt of a Second Order Compelling Production of State Court Record, filed Rule 5 Materials on September 12, 2007. Petitioner seeks habeas relief on ten grounds that can be categorized as follows:

I.    Petitioner should be allowed to withdraw his guilty plea because it was not voluntary or knowing (Claims I, II, III).

II.   Petitioner should be allowed to withdraw his guilty plea because his trial counsel was constitutionally ineffective (Claims IV, V, VI, VII).

III.  Petitioner's convictions for felon in possession of a firearm and felony firearm should be vacated because they violate the double jeopardy protection against multiple punishments for the same offense (Claim VIII).

IV.   "Ineffective Assistance of Appellate Counsel."  (Claim IX).

V.    "Halbert Violation."  (Claim X).

## II.  STANDARD OF REVIEW

This Court may not grant habeas relief on any claim adjudicated on the merits in state court unless the adjudication,

1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).  In analyzing whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings of the Supreme Court's decisions, not their dicta.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  A state court decision on the merits is contrary to clearly established Supreme Court precedent only if the reasoning or the result of the decision contradicts that precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002).  A federal court may grant habeas relief under the unreasonable application clause if the state court decision (a) identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies it to the facts, or (b) either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context.  *Williams*, 529 U.S. at 407-08.  To violate the unreasonable application clause, the state court application of Supreme Court precedent must have been "objectively unreasonable," not simply erroneous or incorrect. *Id*. at 409-11. State court factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[W]here the state court decides a claim on the merits but does not articulate the reasons for its decision, [a federal habeas court is] 'obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented.' " *Stewart v. Erwin*, 503 F.3d 488, 493-94 (6th Cir. 2007) (quoting *Harris v. Stovall,* 212 F.3d 940, 943 (6th Cir.2000)).  "This 'independent review' is 'not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.'" *Stewart*, 503 F.3d at 494 (quoting *Harris,* 212 F.3d at 943).

5

## III.  DISCUSSION

### A.  Procedural Default

Respondent asserts that Petitioner has procedurally defaulted his claims.  If a petitioner fails to present federal habeas claims to the state courts in accordance with the state's procedural rules, such claims are procedurally defaulted and federal habeas review is barred.  *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citations omitted); *see also Burroughs v. Makowski*, 282 F.3d 410, 413 (6th Cir. 2002) (procedural default is based upon "independent and adequate state ground doctrine" that bars federal habeas review when state court declines to address prisoner's federal claims because of failure to meet state procedural requirement) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)).

To determine whether a petitioner has procedurally defaulted a federal claim in state court, a federal habeas court must determine whether:

> 1) the petitioner failed to comply with an applicable state procedural rule; 2) the last state court rendering judgment on the claim at issue, in fact enforced the applicable state procedural rule so as to bar that claim; and 3) the state procedural default is an adequate and independent state ground properly foreclosing federal habeas review of the petitioner's federal claim at issue.

*Hicks v. Straub*, 377 F.3d 538, 551 (6th Cir. 2004) (citations omitted).  If under these standards a petitioner is shown to have procedurally defaulted his federal claims in state court, federal habeas review is barred unless the petitioner demonstrates either: "1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or 2) that a lack of federal habeas review of the claim's merits will result in a fundamental miscarriage of justice."  *Id.* at 551-52 (citing *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

6

In the instant case, the state trial court explicitly agreed to hear the merits of Petitioner's appellate claims (Claims I through VIII) in the form of a M.C.R. 6.500 post-conviction motion after learning the circumstances behind appellate counsel's failure to file a timely application for leave to appeal. The court decided the motion against Petitioner on its merits. The state appellate courts invoked M.C.R. 6.508(D) as the basis for denying leave to appeal.[2]  Given that the state trial court ruled on the merits of Petitioner's federal claims, this court finds no procedural default and will review the habeas claims on the merits. *Abela v. Martin,* 380 F.3d 915, 923-24 (6th Cir. 2004) (where state trial court decides issue against a petitioner on the merits, Michigan Supreme Court's general reference to M.C.R. 6.508(D) when denying leave to appeal should be interpreted as relying

---

[2]The Michigan Supreme Court granted Petitioner's request to add the issue of ineffectiveness of appellate counsel (Claim 9) and denied his request to remand the case for adjudication of his *Halbert* claim (Claim 10) before denying his application for leave to appeal. The procedural posture of these claims raises issues of procedural default and exhaustion. An application for a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999) (exhaustion doctrine is designed to give state courts full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts and requires that state prisoners give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process). The Court can, however, exercise its discretion to review unexhausted claims and deny them because they lack merit. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.")

Similarly, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones,* 351 F.3d 212, 215 (6th Cir.2003) (citing *Lambrix v. Singletary,* 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix,* 520 U.S. at 525; *cf.* 28 U.S.C. § 2254(b)(2) In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of Claims 9 and 10.

on the merits-based portion of the 6.508(D) and not as invoking a procedural bar)[3]; *cf. Hicks,* 377 F.3d at 558 n. 17 (where state trial court decided ineffective-assistance-of-appellate counsel claim against petitioner, Michigan appellate courts' subsequent denial of leave to appeal for failure to satisfy M.C.R. 6.508(D) implicitly invokes subsection (2) with respect to such claim which does not constitute a state procedural ground that is adequate to bar federal habeas review).

## B. Double Jeopardy Violation (Claim VIII)

Petitioner claims that his convictions for felon in possession of a firearm and felony firearm based upon the same conduct of possessing a pistol violate his Double Jeopardy protections. Claims of deprivation of constitutional rights that occur before the entry of a guilty plea are normally foreclosed by that plea. *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the

---

[3]In a recent unpublished opinion, the Sixth Circuit notes an intra-circuit conflict between *Abela* on the one hand and a line of cases beginning with *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000) on the other. *See Alexander v. Smith*, 311 Fed. Appx. 875, No. 06-1569, 2009 WL 426261, at *5-*6 (6th Cir. Feb. 20, 2009). The *Simpson* line of cases hold that formulaic one-sentence orders denying relief in reliance on Michigan Court Rule 6.508(D), identical to the orders in the instant case, constitute "explained" decisions that enforce a state procedural bar to federal habeas review. *Id.* The *Alexander* court found the *Simpson* line of authority controlling, such that the content of earlier state court decisions - whether or not they rest on the procedural bar or on the merits – cannot be considered. *Id.* at *6. In *Ivory v. Jackson*, 509 F.3d 284, 292 (6th Cir. 2007), however, the court seems to concur with the *Abela* panel that whether or not a one-sentence order from the Michigan Supreme Court that relies upon Michigan Court Rule 6.508(D) is a "reasoned state-court opinion" for purposes of procedural default analysis, depends upon whether or not the lower state court addresses the merits of a state prisoner's claims. The *Alexander* court does not discuss *Ivory v. Jackson*.

8

> voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett,* 411 U.S. at 267.  Simply stated, a defendant who pleads guilty generally waives any non-jurisdictional claims that arose before his plea.  In such a case, the Court's inquiry is limited to whether the plea was knowing, intelligent, and voluntary.  *Broce*, 488 U.S. at 569.

In the Double Jeopardy context, an exception to this rule exists when it is plain from the language of the charging document that the State failed to charge two legally cognizable crimes to which the defendant could properly have entered a guilty plea. *Id.* at 575-76.  *See also Menna v. New York*, 423 U.S. 61-62 (1975) (per curiam) ("[w]here the State is precluded by the United States Constitution from haling a defendant into court on a charge, federal law requires that a conviction on that charge be set aside even if the conviction was entered pursuant to a counseled plea of guilty.").  In all other respects, any right to assert a claim of double jeopardy is waived by the entry of the plea. *Broce*, 488 U.S. at 576; *see also Ricketts v. Adamson,* 483 U.S. 1, 10 (1987) (double jeopardy defense may be waived by pretrial agreement).

In this case, consideration of the merits of Petitioner's Double Jeopardy claim is not precluded by his guilty plea because he challenges the State's right to prosecute him on multiple charges arising from one incident of firearm possession.  Furthermore, under Michigan law, a potential Double Jeopardy violation raises a jurisdictional-type issue that cannot be waived by a guilty plea, and may be considered on appeal despite the failure to preserve the issue with a conditional plea. *See People v. New*, 427 Mich. 482, 491-92 (1986).  Accordingly, the Court will address the merits of Petitioner's Double Jeopardy claim.

9

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *Monge v. California*, 524 U.S. 721, 727-28 (1998).  It protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense. *Monge*, 524 U.S. at 727-28.  The protection against multiple punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  The "question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Id.* (citation omitted).  Under the Double Jeopardy Clause, "when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citations omitted).

The felony firearm statute provides:

> A person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony, except a violation of section 223 [unlawful sale of a firearm], section 227 [carrying a concealed weapon], 227a [unlawful possession of a firearm by a licensee] or 230 [alteration of identifying marks on a firearm], is guilty of a felony, and shall be imprisoned for 2 years.

MICH. COMP. LAWS § 750.227b(1).  The Michigan Supreme Court has concluded that "the Legislature's intent in drafting the felony-firearm statute was to provide for an additional felony charge and sentence whenever a person possessing a firearm committed a felony other than those four explicitly enumerated in the felony-firearm statute." *People v. Mitchell,* 456 Mich. 693, 698 (1998). The Michigan Supreme Court has specifically held that "[b]ecause the felon in possession charge is not one of the felony exceptions in the statute, it is clear that defendant could

10

constitutionally be given cumulative punishments when charged and convicted of both felon in possession, MCL § 750.224f, and felony-firearm, MCL § 750.227b." *People v. Calloway,* 469 Mich. 448, 452 (2003).

This Court is bound by the state court's determination of the state legislature's intent. *Banner*, 886 F.2d at 780. Petitioner's conviction on both offenses did not violate the Double Jeopardy Clause and the state court's denial of relief on this claim is neither contrary to United States Supreme Court precedent nor an unreasonable application of federal law. Accordingly, Petitioner is not entitled to habeas relief on this claim.

## C. *Halbert* Claim (Claim X)

Following his conviction and sentencing, Petitioner filed a request for the appointment of appellate counsel which was denied on February 5, 2003. Petitioner filed a motion for reconsideration of the denial, which was also denied on September 30, 2003. The state trial court reconsidered the previous two denials and issued an order appointing appellate counsel for Petitioner on or around November 13, 2003. Petitioner argues that the delay in appointing him appellate counsel was unconstitutional under *Halbert v. Michigan*, 545 U.S. 605 (2005).

In *Halbert*, the United States Supreme Court held that indigent defendants convicted on their pleas have a constitutional right to the appointment of appellate counsel in their first-tier review in the Michigan Court of Appeals. *Id.* at 616-17. As Petitioner concedes, he was appointed appellate counsel. There would be an issue under *Halbert* only if Petitioner had been denied the appointment altogether. *See Sanders v. Lafler*, 618 F.Supp.2d 724 (E.D. Mich. 2009) (following guilty-plea conviction, denial of counsel for first-tier appellate review violated Petitioner's constitutional rights as set forth in *Halbert*, which warranted grant of writ of habeas corpus). Because no violation of

*Halbert* occurred in the state proceedings, Petitioner has not stated a claim entitling him to habeas relief.

### D.  Ineffective Assistance of Appellate Counsel (Claim IX)

As Petitioner notes, due to the delay in appointing appellate counsel, (approximately eleven months from the date he was sentenced) his counsel had approximately one month to file a timely application for leave to appeal under M.C.R. 7.205(F)(3)(b) (allowing for filing within twelve months of entry of order or judgment).  Appellate counsel sought to rely upon an exception to M.C.R. 7.205(F)(3) found in M.C.R. 7.205(F)(4), but miscalculated the amount of extra time he would have and filed an untimely application for leave to appeal.  Petitioner argues that this miscalculation, which resulted in the dismissal of his application for leave to appeal as untimely, resulted in the denial of his right to the effective assistance of appellate counsel.

The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel on direct appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance.  First, a defendant must show that counsel's performance was deficient by demonstrating that "counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The second prong of *Strickland* examines whether the defendant was prejudiced by counsel's deficient performance.  To establish prejudice in most cases, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  In certain cases, where counsel fails to provide any assistance to a criminal defendant at a critical stage of his criminal proceedings, prejudice may be presumed if "the violation of the right to counsel rendered

12

the proceeding presumptively unreliable or entirely nonexistent." *Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000) (citations omitted). In *Roe*, the Court held that appellate counsel's failure to file a notice of appeal which resulted in the complete denial of an appeal the defendant would have otherwise taken entitled the defendant to a presumption of prejudice and resulted in the denial of the right to the effective assistance of counsel. *Id.* at 483-84 (deficient performance deprived defendant of appellate proceeding altogether).

The Court will assume that appellate counsel's performance in this case was constitutionally deficient. *Walker v. McKee*, 366 F.Supp.2d 544, 548 (E.D. Mich. 2005). The question presented is whether the failure to file a timely application for leave to appeal entitles Petitioner to a presumption of prejudice under *Roe* or whether Petitioner must demonstrate prejudice under *Strickland* and its progeny. This question in turn depends upon whether counsel's deficient performance rendered the appellate proceeding "presumptively unreliable or entirely nonexistent." *Walker,* 366 F.Supp.2d at 548-49 (quoting *Roe*).

In *Walker*, appellate counsel failed to file a timely claim for direct appeal following the petitioner's felony convictions but did file a delayed application for leave to appeal, which the Michigan Court of Appeals denied "for lack of merit on the grounds presented." *Id.* at 546. The Michigan Supreme Court denied leave to appeal. *Id.* The federal habeas court found that because the petitioner was able to pursue his appellate rights by filing an application for leave to appeal, "his direct appeal cannot be considered 'entirely nonexistent.'" *Id.* at 548. Similarly, because the Michigan Court of Appeals denied his application for lack of merit, even though not in a written opinion "it cannot be said that the Petitioner's appeal was 'presumptively unreliable.'" *Id.* at 549. The court went on to find that the petitioner was not entitled to a presumption of prejudice. *Id.* The

13

court left the option of demonstrating actual prejudice under *Strickland* open but did not decide the issue. *Id.*

In the present case, because Petitioner was able to have his appellate claims considered by the trial court in a post-conviction motion, his appellate rights cannot be considered entirely nonexistent or presumptively unreliable and he is not entitled to a presumption of prejudice under *Roe*. *Id.; Drumm v. Warren*, 2005 WL 3107772, *3 (E.D. Mich. Nov. 18, 2005) (*Roe* presumption of prejudice does not attach where petitioner avails himself of post-conviction motion avenue); *but see Benoit v. Bock*, 237 F.Supp.2d 804 (E.D. Mich. 2003) (Lawson, J.) (petitioner entitled to presumption of prejudice where appellate counsel failed to perfect appeal of right and where subsequent motion for new trial was denied and delayed application for leave to appeal was denied for lack of merit). The Court notes that this was a guilty plea conviction and under Michigan law, Petitioner was not entitled to an appeal of right but only to the right to file an application for leave to appeal. *See* Mich. Comp. Laws § 770.12(2)(e).

Neither can Petitioner demonstrate prejudice under *Strickland*. Appellate counsel's failure to file a timely application for leave to appeal did not prevent petitioner from challenging his conviction in the state courts because he was able to have his appellate claims heard and reviewed through a post-conviction motion. A post-conviction motion is an "adequate substitute for direct appellate review" and therefore petitioner cannot demonstrate that counsel's failure to file a timely application for leave to appeal prejudiced him. *Hollin v. Sowders*, 710 F.2d 264, 266 (6th Cir. 1983); *Bair v. Phillips*, 106 F.Supp.2d 934, 943 (E.D. Mich. 2000) (citing *Gardner v. Ponte,* 817 F.2d 183, 189 (1st Cir. 1987)). *See also Johnson v. Warren,* 344 F.Supp.2d 1081, 1096 (E.D. Mich. 2004) (failure to raise certain issues on direct appeal did not prejudice petitioner because such issues were

14

eventually considered and rejected on post-conviction review by the same courts that would have heard direct appeal). Because in *Hollin* the Sixth Circuit found a post-conviction motion an adequate substitute for <u>direct</u> appellate review, *a fortiori*, it should serve as an adequate substitute for the discretionary appellate review counsel's action foreclosed in this case. "There is no point in having the state court reconsider a case that it has already addressed." *Hollin*, 710 F.2d at 269 (Merritt, J., concurring). The conclusion that Petitioner's ineffective assistance of appellate counsel claim lacks merit is neither contrary to nor an unreasonable application of *Strickland*, *Evitts* or *Roe*. Petitioner is not entitled to habeas relief on his ineffectiveness of appellate counsel claim.

**E.  Withdrawal of Plea**

**1.  Plea was voluntary, intelligent and knowing (Claims I, II, and III).**

Petitioner challenges the constitutionality of his guilty plea. "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States,* 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). A plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving. *Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976). A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748 (1970). The state bears the burden of showing that the petitioner's plea was voluntary, intelligent and knowing. *Stumpf v. Mitchell*, 367 F.3d 594, 600 (6th Cir. 2004), *vacated in part on other grounds by Bradshaw v. Stumpf*, 545 U.S. 175 (2005). When a petitioner brings a federal habeas petition challenging his guilty plea, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was

15

made voluntarily. *Garcia v. Johnson*, 991 F. 2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. *Id.* Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* at 328. A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *Hoffman v. Jones,* 159 F. Supp. 2d 648, 655-56 (E.D. Mich. 2001). Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005).

Petitioner pled guilty to felony firearm, felon in possession of a firearm and to being a fourth-degree habitual offender.

> THE COURT: Your attorney has advised that you are pleading guilty to Count III, weapons-firearms-possession by a felon, and count IV, possession of a firearm while committing a felony, habitual offender, fourth, in return for Counts I and II being dismissed in [this case], and also with the further consideration that the sex offender-failure to register case, 01-020793, would be dismissed and with the further consideration that if I decided to sentence outside the guidelines for the cases you are pleading guilty to I would allow you to withdraw your plea. Is that correct? That's your understanding as well?

> THE DEFENDANT: Yes, sir. At this moment, yes.

> THE COURT: . . . . And how would you – how do you plead then on Counts III, weapons-firearms-possession by a felon, and count IV, possession of a firearm while committing a felony, HOA fourth?

> THE DEFENDANT: Guilty, Your Honor.

> THE COURT: Have you discussed this with [trial counsel] Mr. Gust?

> THE DEFENDANT: Yes, I have.

THE COURT: Do you understand the nature of the offense?

THE DEFENDANT: Yes, I do.

THE COURT: Are you doing so freely and voluntarily?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you are pleading guilty to felonies and in the case of Count III [felon in possession], the maximum is five years or $5,000, Count IV [felony firearm] is a felony, a maximum two years consecutively and preceding the term of imprisonment imposed for the other felony, which means that you serve two years on Count IV first and then you start serving the sentence on Count III but because of the habitual offender fourth, the five years would be – the maximum is elevated to life?  Do you understand that?

THE DEFENDANT: Yes, I do, sir.

* * *

THE COURT: Okay.  Do you understand by pleading guilty you will not have a trial and, therefore, you're giving up certain rights that you would have at a trial?

THE DEFENDANT: Yes, I do, sir.

THE COURT: For example, you're waiving your right to a trial by a jury or trial by the Court.

THE DEFENDANT: Yes, I do, sir.

THE COURT: Do you understand you waive your right to be presumed innocent until proven guilty beyond a reasonable doubt?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand you waive your right to confront the witnesses who appear against you?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand you waive your right to remain silent?

17

THE DEFENDANT: Yes, I do, sir.

THE COURT: Do you understand you waive your right not to have your silence used against you?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that you waive your right to testify at the trial?

THE DEFENDANT: Yes, sir.

* * *

THE COURT: Are you – were there any other threats, promises or inducements to get you to plead guilty today?

THE DEFENDANT: No, sir.

THE COURT: Do you understand you waive any claim there was no other threats, promises or inducements?

THE DEFENDANT: Yes, sir, I understand.

THE COURT: Do you understand you waive any claim that it was not your own choice to enter this plea agreement?

THE DEFENDANT: Yes, I do.

THE COURT: Do you understand that the – I will allow you to withdraw from the plea if I were to exceed the sentencing guidelines on [Count III]?

THE DEFENDANT: Yes, I do, sir.

THE COURT: Okay.  And beyond that has anybody told you what I'm going to do or anything more about this case?

THE DEFENDANT: No.

THE COURT.  Okay.  And has there been any other threats of any kind?

18

THE DEFENDANT: No.

THE COURT: Understanding these rights, do you still wish to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Could you tell me what it is that you did that causes you to plead guilty? . . . .  Is it true that you had a gun on that occasion even after you had been convicted [of prior felonies]?  Is it true you had a gun in your home –

THE DEFENDANT: Yes.

THE COURT:  – and had been convicted of these other crimes in the past?

THE DEFENDANT: Yes.  Yes it is.

THE COURT: And is it true that you had the pistol at the time that you possessed this with the prior felony record?  Was it a pistol?

THE DEFENDANT: It was – yeah.

THE COURT: Okay.  You had the pistol in your home.

THE DEFENDANT: Yes, it was in my home.

* * *

THE COURT: Are counsel aware of any other threats, promises or inducements?

MR. GUST: There are none, Your Honor.

MS. METER [prosecutor]: No, Your Honor.

THE COURT: Are counsel satisfied the Court has complied with the provisions of MCR 6.302 Subdivisions (B) through (D) with regard to guilty pleas?

MR. GUST: Defense is satisfied.

MS. METER: People are satisfied.

> THE COURT: The Court will accept the plea as voluntary, understanding, knowing and accurate. . . . .

Pl. Tr., pp. 6-13 (10/9/02).

The extensive plea colloquy demonstrates that Petitioner understood the nature of the offenses, the maximum penalties he faced, and the constitutional rights he was waiving. Petitioner has no federal constitutional right or absolute right under state law to withdraw his guilty plea. *See Adams v. Burt,* 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (internal citations omitted). Therefore, unless the plea violated a clearly-established constitutional right, whether to allow the withdrawal of a criminal defendant's guilty plea is discretionary with the state trial court. *See Hoffman,* 159 F. Supp. 2d at 655. Petitioner argues that he was unaware of a potential defense at the time of the plea and that he pled despite being innocent because his lawyer told him the charges were indefensible (Claims I and II). Petitioner also argues that the plea was not voluntary because he didn't gain anything from the plea agreement, which made it "illusory" (Claim III).

Claims I and II do not appear to raise constitutional challenges and for that reason do not provide a basis for habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Smith v. Phillips*, 455 U.S. 209, 221 (1982) (non-constitutional claims are not cognizable in federal habeas corpus proceedings). They could be construed as an argument that the trial court should have allowed him to withdraw his guilty plea because he is actually innocent.[4] Factual guilt or innocence is irrelevant to the question of whether a defendant's plea was voluntary. *Gary v. Harry*, 2008 WL 4919502, *7 (E.D. Mich. Aug. 18, 2008) (citations omitted). Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or

---

[4]To the extent these arguments raise issues regarding the effectiveness of trial counsel, such issues are addressed below.

declining to admit his commission of the crime. See *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970). "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, *a fortiori* a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F.Supp. 338, 344 (S.D.N.Y.1979) (footnotes omitted).

Petitioner next contends that because the prosecutor provided "nothing of value" to him in the plea agreement, he received an illusory bargain which renders the plea agreement invalid (Claim III). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. United States*, 860 F. Supp. 1234, 1249-50 (E.D. Mich. 1994) (citing *Dillon v. United States,* 307 F.2d 445 (9th Cir. 1962)). In this case, the prosecutor agreed to dismiss the felonious assault charge and domestic violence charge in this case, as well as a separate case in which Petitioner was charged with the felony of failing to register as a sex offender. As the two felonies were dismissed, Petitioner's sentencing guidelines score was lower than it otherwise would have been. Further, the prosecutor and the court agreed to sentence within the guidelines. This court concludes that the benefits of the plea and sentencing agreements were not illusory because Petitioner was promised and received: 1) a sentence within the guidelines when the court would have otherwise had the discretion to depart upwards from the guideline range; 2) the dismissal of three other counts, including two felonies; and 3) a lower sentencing guidelines score. Petitioner received real, tangible benefits in consideration for the plea. *Daniels v. Overton*, 845 F. Supp. 1170, 1174 (E.D. Mich. 1994). The benefits of Petitioner's plea agreement were not illusory. *See McAdoo v. Elo,* 365 F. 3d 487, 498 (6th Cir. 2004).

21

Because Petitioner's plea was not coerced and was voluntary and knowing within the meaning of Supreme Court precedent, the state court decisions on this issue were neither contrary to clearly established federal law nor based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Petitioner is therefore not entitled to habeas relief on Claims 1, 2 or 3.

**2. Ineffective Assistance of Trial Counsel (Claims IV, V, VI, VII)**

Petitioner argues that his lawyer failed to provide constitutionally adequate representation because he failed to inform him of an available defense (Claim IV), failed to pursue pre-trial suppression motions (Claim V), failed to assert a legal basis in support of his motion to withdraw his guilty plea (Claim VI) and labored under a conflict of interest (Claim VII). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 497 U.S. 759, 771 (1970)). In the context of assistance of counsel claims arising out of the plea process, the *Strickland* prejudice requirement is satisfied when a defendant can show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

Following the *Ginther* hearing, the trial court ruled that Petitioner failed to establish that counsel's performance was constitutionally deficient.

> THE COURT: [I]t appears to me that given what Mr. Gust had to work with and his client's statements, that defendant has failed to sustain the burden of proof [under *Strickland*] necessary at this point to allow him to have a trial on the main merits. So, for those reasons, I will deny the motion at this time.

*Id.*, p. 90.

## a. Claim Waived By Entry of Valid Guilty Plea

Respondent argues that Petitioner's ineffective assistance of counsel claims were waived by his guilty plea. As discussed above, a petitioner who pleads guilty, "may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea." *Tollett,* 411 U.S. at 267. However, a guilty plea does not waive an ineffective assistance of counsel claim which asserts that counsel's ineffectiveness rendered a plea involuntary. See *Claybron v. Stovall*, No. 05-73676, 2007 WL 551599, at *6 (E.D.Mich.Feb.20, 2007) ("a voluntary guilty plea waives all claims of ineffective assistance of counsel, except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary"). A claim for ineffective assistance of counsel claim is barred "except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary." *United States v. Glinsey,* 209 F.3d 386, 392 (5th Cir.2000). In Claim V, Petitioner complains that counsel failed to file pre-trial suppression motions. This claim does not implicate the voluntary and intelligent nature of his plea and is therefore waived by Petitioner's valid guilty plea. *Blackwell v. United States*, 2008 WL 4619801, *5 (S.D. Ohio Oct. 15, 2008) (entry of valid guilty plea waived claim that trial counsel was ineffective for failing to file pre-trial suppression motions).[5]

---

[5] The Court notes that during the *Ginther* hearing, trial counsel testified about why he did not file pre-trial suppression motions. He stated that he didn't think there was a basis for pre-trial motions to suppress the gun and bullets based on unconstitutional searches or to suppress Petitioner's statements because of *Miranda* violations. Mot. Tr., pp. 25 (3/15/2004). "Well, I thought that since there was a recorded statement where they obviously did give him his *Miranda* warnings prior to the statement, wherein he admitted having the gun and why he had the gun, I thought [a suppression motion] really wasn't necessary." *Id.,* p. 26. Mr. Gust testified

23

**b. Remaining Ineffective Assistance of Counsel Claims**

Petitioner's remaining ineffective assistance of counsel claims challenge the voluntary and knowing nature of his guilty plea and, therefore, are not waived by the guilty plea.  First, Petitioner argues that trial counsel gave him faulty advice by informing him that the felon in possession of a firearm charge was "indefensible" (Claim IV).  He contends that he could have asserted the defense of "momentary innocent possession."   In the context of a guilty plea case, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

Michigan courts recognized a defense of innocent or momentary  possession to a weapons possession charge at the time of Petitioner's guilty plea.  *See People v. Coffey*, 153 Mich. App. 311, 315 (1986) (unlawful possession of concealed weapon), *overruled by People v. Hernandez-Garcia*, 477 Mich. 1039, 1040 (2007).  In order to prevail on such a defense, the defendant must have shown possession without criminal intent and that the defendant intended to deliver the weapon to the police at the earliest possible time.  *Coffey,* 153 Mich. App. at 314-15.  Petitioner asserts that he informed trial counsel that "he found the weapon and touched it only momentarily to move it out of harms way."

However, at the *Ginther* hearing, trial counsel testified that the reason he viewed the charges as "indefensible" was Petitioner's inculpatory statements to law enforcement and the fact that police

---

that he did not believe there was any basis to file a motion to suppress the physical evidence (bullets found in Petitioner's pocket, and gun found in car) in this case because there was probable cause a crime was being committed at the time the police first arrived at the scene and justification to pat down Petitioner.  *Id.*, pp. 22-25 (window knocked out, blood on the steps).

24

recovered bullets from his pocket.  Mot. Tr., p. 18 (3/15/2004).  These facts contradict Petitioner's later assertions that he found the weapon and only touched it momentarily.  Petitioner admitted that he purchased the gun to protect himself, that he had it in his possession for self-defense, and that he knew he should not be in possession of a gun.  *Id.*, pp. 27, 39-40.  This admission was recorded and uttered after Petitioner was given *Miranda* warnings.  There was an additional police report in which Petitioner stated that he bought the gun on the street and that he had retrieved the gun from the bathroom of the house before placing it under the seat of the car where it was found.  *Id.*, pp. 38-40. Trial counsel was proceeding on the basis that Petitioner admitted to police that he possessed a gun, and that Petitioner never informed him that he was lying when he made that admission to police and that he and Petitioner viewed possession of the gun by Petitioner as a given.  *Id.*, p. 34-37.  Trial counsel believed that these facts would be "devastating."  *Id.*, p. 37.  To counsel it "seemed like it would be silly to raise a defense when in his recorded statement he talks about purchasing the weapon and having the weapon."  *Id.*, p. 27.

After reviewing the record, this Court concludes that the state court's determination that the momentary or innocent possession defense was unlikely to succeed was not unreasonable in light of the evidence presented.  Because Petitioner cannot meet his burden of showing deficient performance or prejudice under *Strickland* and *Hill*, the state court decisions on this issue were not contrary to clearly established federal law.  Petitioner is therefore not entitled to habeas relief on Claim IV.

Petitioner next contends that his trial counsel Mr. Gust labored under a conflict of interest that prevented him from providing constitutionally adequate assistance (Claim VII).  At the *Ginther* hearing, trial counsel also testified regarding the alleged conflict of interest based on his prior

representation of the relatives of the victims of the incident, Rudy and Gloria Sanchez.  Rudy and

Gloria Sanchez had family members who Mr. Gust had represented over twenty or thirty years.

Counsel testified that he did not believe there was any conflict of interest because he did not believe

he had represented Rudy or Gloria Sanchez prior to this instant case and because he did not believe

they would be hostile witnesses but instead would do anything they could to help Petitioner, based

on their statements to him.   Mot. Tr., pp. 14-17 (3/15/2004).

Conflict of interest cases involve a slightly different standard than that used in traditional

ineffectiveness claims.  Where there is a conflict of interest, "counsel breaches the duty of loyalty,

perhaps the most basic of counsel's duties." *Strickland*, 466 U.S. at 692.  When an actual conflict

of interest exists, prejudice is presumed. *See id.*  Prejudice is presumed, however, "only if the

defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual

conflict of interest adversely affected his lawyer's performance.' " *Id.* (quoting *Cuyler v. Sullivan*,

446 U.S. 335, 345-50 (1980)).

In the present case, Petitioner argued that because counsel had represented members of the

victims' family in the past on a retained basis over many years, he had a pecuniary interest in

representing the victims' interests in conflict with representing Petitioner's interests.  Rudy and

Gloria Sanchez had given statements to the police about seeing Petitioner in possession of a gun,

but in later conversations with Mr. Gust had stated that they would testify to the contrary.  Petitioner

argues that because of the alleged conflict, trial counsel advised him to plead guilty because he

wanted to avoid having to cross-examine Rudy and Gloria Sanchez about their statements to the

police.  Mr. Gust  testified that he did not view this as a problem.

> Q.    You don't believe that that may have been a conflict of
>       interest?

26

> A.     Well, no, because Gloria and Rudy, they were both trying to recant what they had told the police evidently, and what Gloria may have told the police, and so, I always felt that they were on the defendant's side, that they weren't hostile witnesses.  They were doing whatever they could to help the defendant.
>
> Q.     Gloria Sanchez was listed on the information as a prosecution witness, is that correct?
>
> A.     Well of course, as a victim, and so was Rudy.  But at any meeting I had, they were there to try to help him, and that's every conversation we had, they came to my office or I would see them in the hall.  It was very apparent that they would do anything they could to help the defendant.
>
> * * *
>
> Q.     [I]f they had testified that my client had a gun or if any other incriminating testimony, you would have had to do your best to cross-examine them?
>
> A.     Well, I suppose.  But it was my understanding that when they testified, the were going to testify that they did not see a gun.
>
> Q.     Both of them?
>
> A.     Yes.

Mot. Tr., pp. 14-16 (3/15/2004).

As an initial matter, while counsel stated that he had represented members of Gloria Sanchez' family in the past, Petitioner did not establish that trial counsel had ever represented either Rudy or Gloria Sanchez prior to his representation of Petitioner.  *Id.*, pp. 12-13.  Moreover, Petitioner failed to establish an actual conflict or how the alleged conflict adversely affected his lawyer's performance.  The trial court found no conflict.

> Now, I'm not aware of anything, and nothing has been brought to my attention, that there is a conflict of interest between Mr. Gust and the victims.  At least none has been specified.  Merely representing other members of a rather large family, I'm not aware that that in and of itself would mean that he couldn't represent [Petitioner].

27

Mot. Tr., pp. 89-90.  The trial court was entitled to rely upon counsel's representations that he believed there was no conflict of interest.  *Frazier v. Kelly,* 112 F. Supp. 2d 253, 257 (W.D.N.Y. 1999), *summarily aff'd,* 225 F.3d 645 (2d Cir. 2000).  Further, the statements Rudy and Gloria Sanchez made to the police were supportive of Petitioner's own admissions about possessing the gun.  Petitioner has not demonstrated any adverse performance and only alleges that his lawyer would have been constrained in his cross-examination of Rudy and Gloria Sanchez if the case had gone to trial.  "A possibility of conflict is insufficient to establish a violation of [the petitioner's] Sixth Amendment rights, and no violation occurs where the conflict is . . . merely hypothetical." *Harbison v. Bell*, 408 F.3d 823, 836 (6th Cir. 2005).

After reviewing the record, this Court concludes that the state court's finding of no conflict of interest was not unreasonable in light of the evidence presented.  Because Petitioner cannot meet his burden of showing deficient performance or prejudice under *Strickland* and *Cuyler v. Sullivan,* the state court decisions on this issue were not contrary to clearly established federal law.  Petitioner is therefore not entitled to habeas relief on Claim VII.

In his final claim, Petitioner complains that trial counsel failed to assert a legal basis in support of his motion to withdraw his guilty plea (Claim VI).  During the *Ginther* hearing, trial counsel was asked about this issue.

> Q.   And isn't it true that nowhere in your written motion do you state a legal basis for a plea withdrawal?
>
> A.   Probably.  I mean, I don't think we had one to be honest with you.
>
> Q.   So whether there [were] facts to support it, you didn't even state a legal basis for it, did you?
>
> A.   I didn't think there was any.

28

> Q.     And at the actual hearing, you did not state a legal basis either?
>
> A.     Again, because I didn't think there was one.

Mot. Tr., pp. 33-34 (3/15/2004).

The court will not address the performance prong of *Strickland* to reach the prejudice inquiry under *Strickland*.   644 U.S. at 697 (court need not address the question of competence if it is easier to dispose of the claim due to the lack of prejudice).  As this court has determined, Petitioner's plea was voluntary, knowing and intelligent after rejecting all of Petitioner's challenges to the plea. Petitioner cannot establish that he was prejudiced by the absence of legal argument in the motion to withdraw his guilty plea because there exists no basis for finding the plea violated a clearly-established constitutional right entitling him to withdraw his plea.  Because Petitioner cannot meet his burden of showing prejudice under *Strickland* and *Hill*, the state court decisions on this issue were not contrary to clearly established federal law.  Petitioner is not entitled to habeas relief on Claim VI.

**IV.  ORDER**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**


                                             S/Denise Page Hood
                                             Denise Page Hood
                                             United States District Judge

Dated:  September 28, 2009

29

I hereby certify that a copy of the foregoing document was served upon Fernando Marrero, Reg. No. 177839, Ojibway Correctional Facility, N5705 Ojibway Rd., Marenisco, MI 49947 and counsel of record on September 28, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager